# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| BART PIKE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:11-cv-1016** |
| v. | ) | |
| | ) | **Judge Aleta A. Trauger** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Pending before the court is the plaintiff's Motion for Leave to Amend Complaint (Docket No. 10), to which the government filed a Response in opposition (Docket No. 13), the plaintiff filed a Reply (Docket No. 16), and the government filed a Sur-Reply (Docket No. 19). For the reasons stated herein, the Motion for Leave to Amend will be granted, and the plaintiff will be directed to file an Amended Complaint consistent with this Memorandum.

## BACKGROUND

### I. Factual Background[1]

This case concerns a single incident involving state and local law enforcement officers who served as members of the Fugitive Task Force ("Task Force") of Operation FALCON, a program coordinated by the United States Marshal's Service ("USMS").[2] For purposes of this

---

[1]Unless otherwise noted, all facts are drawn from the Proposed Amended Complaint filed at Docket No. 11.

[2]The Sixth Circuit recently issued an opinion concerning a plaintiff's tort claims against the United States relating to an Operation FALCON operation. *See Milligan v. United States*, 670 F.3d 686 (6th Cir. 2012). Also, as described in more detail below, Pike also filed and voluntarily dismissed a lawsuit based on the same predicate facts as this case, which was

Task Force, state and local law enforcement officers were deputized as federal officers by the USMS, to aid the USMS in apprehending individuals wanted on outstanding warrants.

On June 22, 2009, nine deputized Task Force members ("Deputized Officers") attempted to serve a subpoena on "Elwood R. Johnson," who was wanted for a probation violation, at plaintiff Bart Pike's address, where the officers believed Johnson had lived five years earlier. (*See* Docket No. 10, Ex. B at p. 30.)   Pike met the Deputized Officers on the porch of his home, where the officers asked if they could enter the residence to search it.   Pike requested that the Deputized Officers show him a copy of the warrant, but they refused to provide it.   Without Pike's permission, the Deputized Officers forced their way into his residence.   Pike explained that he was not Elwood, whose physical description on the warrant did not match Pike, and asked the officers to leave.   The Deputized Officers ignored Pike's request and began to "search" his home.   While purportedly searching Pike's residence for Elwood, the Deputized Officers destroyed Pike's antique guitar, his TV remote, and a door within the house.   They also opened a cremation urn containing Pike's grandmother's ashes and a box containing his father's ashes, to no apparent purpose.[3]

During this incident, a television news crew accompanied the Task Force and, in a news telecast, identified Pike's residence as having been searched by the Task Force.   Pike alleges that the unconstitutional search of his home, the negligence of the Task Force members and their

docketed as *Pike v. Dan Godby and Unknown and Unnamed Other State and Local Law Enforcement Officers*, No. 3:10-547 (M.D. Tenn. filed June 1, 2010) ("*Pike I*").)   In this Memorandum, docket references to the *Pike I* docket are cited as "*Pike I* Docket No. [X]," while references to the docket for this case are cited as "Docket No. [X]."

[3] The Complaint contains specific allegations identifying the personal property and possessions that the Deputized Officers allegedly destroyed (Docket No. 1 ¶ 3.4), but the Proposed Amended Complaint (Docket No. 11) does not.   *See infra* at Facts Section III.C.

supervisors, and the telecasting of the incident severely damaged his reputation, causing him "to be treated as a pariah by many of his friends and associates." (Proposed Am. Compl. ¶ 5.2.) He alleges that the defendants' actions also proximately caused him to suffer the loss of personal possessions and property, public humiliation, pain and suffering, and emotional distress for which he has had to seek professional counseling.

## II.  Efforts to Identify Deputized Officers Within the One-Year Limitations Period

At the time of the incident, Pike did not know the identity of the Deputized Officers who had entered his home. Over the following year, Pike attempted to learn their identities from local, state, and federal authorities through informal letter requests, public records requests, and subpoenas. Exhibit B to the Motion to Amend Complaint contains examples of these efforts, such as letter correspondence and subpoenas to the USMS for documents and testimony. The government has not challenged the accuracy or substance of these materials.[4]

Based on the record before the court, it appears that Pike's counsel engaged in repeated diligent efforts to obtain the identities of the Deputized Officers before filing the *Pike I* Complaint, largely to no avail. For example, with respect to Pike's effort to obtain this information from the federal government, the materials reflect the following timeline of events:

- **September 10, 2009**: Pike's counsel, Philip L Davidson, writes to the United States Attorney's Office for the Middle District of Tennessee

---

[4]Some of the documents were also attached as exhibits to the June 1, 2009 *Pike I* Complaint, which contained allegations regarding Pike's largely futile efforts to that point. (*Pike I* Compl. ¶¶ 2.3-2.5 and Ex. A.) Although several of the Deputized Officers named as defendants in *Pike I* moved for dismissal/judgment in that action, none of them challenged the validity or accuracy of Pike's allegations or the supporting exhibits. Therefore, for purposes of considering the Motion to Amend, the court will take as true the allegations in the *Pike I* Complaint and the supporting exhibits that Pike filed in *Pike I* and in *Pike II*, as they relate to limitations issues.

("USAO") requesting the identity of the federal marshal who was in charge of the raid on Pike's residence. An Assistant U.S. Attorney responds, directing Davidson to Deputy U.S. Marshal John Hargis.

- Fall 2009: Davidson speaks with Hargis to obtain records and identities of the Deputized Officers, but apparently does not receive an adequate response. (Docket No. 10, Ex. B at p. 6 (indicating that, as of December 22, 2009, Pike and Hargis had spoken "two months" earlier).

- December 22, 2009: Davidson writes to Hargis, urging him to provide information regarding the incident pursuant to an attached Freedom of Information Act ("FOIA") request. Hargis does not respond.

- January 22, 2010: Davidson again writes to Hargis to request the information identified in the FOIA request, stating that he will file an action to enforce the FOIA if Hargis does not respond within 10 days.

- January 26, 2010: The Chief Deputy U.S. Marshal for the Middle District of Tennessee responds, stating that Pike's letters had been forwarded to the USMS General Counsel's office and that no response had yet been received.

- February 2, 2010: On February 2, 2010, Pike issues a subpoena to the USMS out of this court, demanding production of all records concerning the June 22, 2009 incident, including "documents which list the Marshall [sic] in charge and all officers participating." (*Id*. at p. 10.) Assistant U.S. Attorney Ed Bordley is apparently assigned to handle the FOIA request and discusses it and the newly issued subpoena with Davidson. Pike writes to Bordley, confirming their previous conversation and requesting a response to the subpoena and to the FOIA request.

- February 9, 2010: The USAO responds to the subpoena, challenging its validity as non-compliant with the Federal Rules of Civil Procedure, 28 C.F.R. § 16.21 *et seq.*, and *U.S. ex. rel Touhy v. Ragen*, 340 U.S. 462, 71 S. Ct. 416, 95 L. Ed. 2d 417 (1951). On that basis, the USAO refuses to comply with the subpoena on behalf of the USMS.

- February 11, 2010: Davidson writes to Bordley to ask whether the USAO will similarly refuse to comply with his pending FOIA request.

- March 24, 2010: Bordley responds to Davidson on behalf of the USMS, stating that the USMS had identified eight documents responsive to the FOIA request. Of these eight documents, the USMS refuses to produce four, based on certain Privacy Act and FOIA exemptions. The USMS

produces the remaining four documents *with the names of the officers redacted*, again based on Privacy Act and FOIA exemptions.

- <u>June 1, 2010</u>:  By this date – just under one year after the incident – only the City of Smyrna has responded to Pike with a name: Deputized Officer Dan Godby.  Therefore, Pike files a lawsuit against the individual Deputized Officers (*Pike I*) that identifies only Godby by name and identifies the remaining Deputized Officers as "Unknown and Unnamed" Task Force members.

- <u>August 11, 2010</u>:  Pike issues a second subpoena to the USMS, in the same form as the first subpoena – *i.e.*, demanding records relating to the June 22, 2010 incident and the identities of the officers involved.

- <u>August 16, 2010</u>:  The USAO responds, stating that the FOIA request did not comply with 28 C.F.R. § 16.22(d)/*Touhy*.  On that basis, the USAO refuses to produce records, absent an adequate "written summary."  The letter states that, upon receipt of a written summary, the USAO will consult with the USMS to determine "whether, and to what extent, to comply with the request."  (*Id.* at p. 22.)

- <u>August 18, 2010</u>:  Pike's counsel writes to the USAO.  Although he disagrees with the government's characterization that it had not yet received a written summary of the incident, he provides a short description of the incident, demands production of the Elwood warrant, and demands identification of "the leader of the raid" in which "my client's civil rights were violated."  (*Id.* at p. 23.)

- <u>August 25, 2010</u> and <u>September 3, 2010</u>:  The USAO produces a copy of the warrant and identifies Hargis as the Operation FALCON regional commander.

- <u>September 13, 2010</u>:  Davidson asks the USAO to identify the officers involved in the raid, including their respective employers, to "preclude completely the need for a deposition."

- <u>October 1, 2010</u>: Pursuant to Fed. R. Civ. P. 4(m), the default time period for serving the Summons and Complaint on each defendant – *i.e.*, 120 days from June 1, 2010 – expires.

- <u>October 20, 2010</u>:  Pike issues to the USMS a third subpoena, which bears the *Pike I* case caption and demands a deposition of Hargis.

- <u>October 20, 2010</u>:  The United States responds to the subpoena.  The

USAO acknowledges that, in "your letters of September 10, 2009, September 17, 2009, December 22, 2009, February 2, 2010, August 18, 2010, and August 30, 2010, as well as your document subpoena dated August 11, 2010,[5] you have requested the identity of the Marshal in charge of the team present at your client's home on June 22, 2009, *as well as the names of all participating officers*." (*Id.* at p. 27) (emphasis added). The letter states that, to obviate the need for a deposition, the USMS "will agree to provide those names to you." (*Id.*)

- <u>October 28, 2010</u>: The United States identifies the names and local employers of the Deputized Officers.

- <u>December 2, 2010</u>: Pike seeks leave to amend the *Pike I* Complaint to name the remaining Deputized Officers.

Furthermore, at least one local authority provided inaccurate information that prevented Pike from identifying at least one additional Deputized Officer within one year of the incident. (*Id.* at p. 5.) On September 16, 2009, the Metropolitan Nashville Police Department represented to Pike that "no Nashville Metro Police Officers" participated in the raid on his home. However, the USAO ultimately confirmed (in October 2010) that one Metro Nashville Police Officer, Deputized Officer Nate Lester, *did* in fact participate in the raid.

## III.  <u>Procedural History</u>

### A.  *Pike I*

In the *Pike I* Complaint, filed within one year of the incident, Pike asserted constitutional claims against Godby and the remaining "Unknown" Deputized Officers for violating his Fourth Amendment rights. (*Pike I* Docket No. 1.) Pike cited 42 U.S.C. § 1983 as the basis for his cause of action. After the federal government finally released the names of the remaining Deputized Officers on October 28, 2010 – more than one year after the underlying incident and more than

---

[5]The September 17, 2009 and August 18, 2010 letters referenced by the USAO are not contained in the record before the court.

120 days after the Complaint was filed – Pike sought leave of court to file an Amended Complaint that identified the "Unknown" officers by name.  (*Pike I* Docket Nos. 11 (Motion to Amend) and 12 (proposed Amended Complaint).)  The court granted that request on December 27, 2011.  (*Pike I* Docket No. 12.)

Several of the newly identified officers moved to dismiss or for judgment on the pleadings, on the basis that the amendments did not relate back to the date of the original Complaint under Fed. R. Civ. P. 15(c) and, therefore, were untimely.  (*See Pike I* Docket Nos. 21-22, 25, 28, 32, 32-34.)

On February 14, 2011, while the motions were pending, Pike filed an administrative claim against the United States.  The administrative claim served as a predicate to asserting a claim in court against the United States under the Federal Tort Claims Act ("FTCA").

On February 21, 2011, before Pike's deadline to respond to the pending motions[6] and before the court had ruled on them, Pike filed a Motion for Voluntary Dismissal pursuant to Fed. R. Civ. P. 41.  In the Motion for Voluntary Dismissal, Pike represented that, "based on the discovery taken in this case so far, the Plaintiff believes this is a case of negligence pursuant to the Federal Tort Claim[s] Act."  (*Pike I* Docket No. 35)  The court granted the motion and dismissed the action without prejudice on February 24, 2011.  (*Pike I* Docket Nos. 36 and 37.)  Accordingly, neither Pike nor the court had the opportunity to address the defendants' arguments

---

[6]The newly added officers who moved for dismissal/judgment by this point (February 21, 2011) had all asserted and/or adopted essentially identical statute of limitations arguments, all premised on the relation back doctrine of Fed. R. Civ. 15.  It appears that other, newly-added officers may have been preparing to file similar motions.  For these reasons, Pike had requested an extension of time, to March 1, 2011, to file an *omnibus* response to the motions that were pending and/or would have been filed.

regarding the timeliness of the amendments.

**B.** *Pike II*

On October 25, 2011, nine months after voluntarily dismissing the *Pike I* action, Pike filed the instant lawsuit (*Pike II*) against the United States.[7] Premised on essentially the same operative facts as *Pike I*, the *Pike II* Complaint alleges negligence-based theories against the government under the FTCA, including negligence, negligent supervision, and negligent infliction of mental distress.

On February 20, 2011 – within one year of the voluntary dismissal of *Pike I* – Pike filed the instant Motion for Leave to Amend, which broadly seeks leave to re-assert the Fourth Amendment constitutional claims against the Deputized Officers in their individual capacities, again purportedly under § 1983. (*See* Docket Nos. 10 (Motion for Leave to Amend) and 11 (Proposed Amended Complaint).)

**C.     Changes in the Proposed Amended Complaint**

Pike's Proposed Amended Complaint makes several changes to the *Pike II* Complaint, only some of which the parties have addressed. The court has identified the following proposed amendments:

- The First Amended Complaint adds descriptions identifying each Deputized Officer, including each officer's employer and his relationship to the Task Force. (*See* Proposed Am. Compl. ¶¶ 2.4-2.13);

- Where the original Complaint incorrectly identified the date of the incident as "June 27, 2009" (Compl. ¶¶ 3 and 3.1), the Proposed Amended Complaint corrects the date to "June 22, 2009" (Proposed Am. Compl. ¶¶ 3 and 3.1);

---

[7]Pike was represented throughout *Pike I* by Philip L. Davidson. *Pike II* was filed jointly by Davidson and co-counsel Joseph Johnston.

- The Proposed Amended Complaint removes Complaint ¶ 3.4,[8] which had specified the personal property and possessions that the Deputized Officers allegedly destroyed;

- The Proposed Amended Complaint removes Complaint ¶ 3.5, which specified that, after damaging Pike's property, the officers left without having obtained his permission to enter and without having shown him a warrant (*i.e.*, information that was redundant of other allegations);

- Paragraph 4 of the Complaint, entitled "Negligence," specified that "[t]he aforementioned acts of the members of the Operation FALCON Task Force were acts of negligent supervision and negligence" and that "Pike suffered negligent infliction of mental distress" when his father's and grandmother's ashes were damaged.  The Amended Complaint removes this paragraph in favor of new two paragraphs: ¶ 4, entitled "Constitutional Violation," and subparagraph 4.1, which collectively allege that "the Defendants" (effectively, the Deputized Officers) violated Pike's Fourth Amendment right to be free from unreasonable searches and seizures;

- The Complaint "Damages" section (Compl. ¶ 5) simply stated that, as a result of the government's acts of negligence, Pike suffered property losses and emotional distress, for which he sought psychological counseling.  The Proposed Amended Complaint removes Complaint ¶ 5 in favor of ¶¶ 5, 5.1, and 5.2, which collectively allege that a television news crew accompanied the Task Force and broadcast some aspects of the raid, causing Pike to be "treated like a pariah," and that the "unconstitutional actions and negligence of the Defendants" caused him to suffer a variety of damages;

- The Complaint demanded, in relevant part, a "hearing" on Pike's claims, $300,000 in compensatory damages, and prejudgment interest.  (Compl. at pp. 3-4.)  By contrast, the Proposed Amendment Complaint demands "a jury to hear this case based on the Federal civil rights violation," "compensatory damages in an amount that will compensate him for his injuries . . . ," and "reasonable attorney's fees pursuant to Title 42 U.S.C. § 1988," but contains no demand for prejudgment interest.  (Proposed Am. Compl. at p. 6.)

The parties have neither acknowledged nor addressed many of the proposed changes to the

---

[8]The original Complaint was misnumbered and contained no ¶ 3.3.

Complaint, instead focusing on the broader issue of whether Pike may re-assert claims against the Deputized Officers in the first place.

### D. The Parties' Positions Concerning the Motion for Leave to Amend

The government vehemently opposes the proposed amendments, contending that they are futile because (a) the claims arise under *Bivens*, not § 1983; (b) the claims are untimely and are not saved by the "Tennessee Savings Statute," Tenn. Code. Ann. § 28-1-105, because Pike did not assert *Bivens* claims in *Pike I* in the first place; and (c) Pike made his "election of remedies" to pursue FTCA claims when he dismissed *Pike I*.

The court ordered Pike to provide additional information addressing the government's arguments. In his Reply in response to that Order, Pike asserts the following arguments: (1) the court should construe both the *Pike I* Complaint and the *Pike II* Complaint as asserting *Bivens* claims against the Deputized Officers; (2) in furtherance of the broad remedial purposes of the Tennessee Savings Statute, the court should find that the proposed claims are timely; (3) he did not "elect" his remedies through the Rule 41(a) dismissal motion and may pursue both FTCA and *Bivens* claims in this lawsuit; and (4) he has chosen to re-assert the *Bivens* claims because (a) pursuant to *Milligan*, the government may assert a "discretionary function" defense to immunize itself from liability and/or (b) the *Bivens* claims afford remedies that are unavailable under the FTCA, including punitive damages and the right to a jury trial. As to the basis for seeking to add these claims now, Pike contends that he originally sued the United States in the "belie[f] that an FTCA claim in this case against the United States government would offer a less expensive and more efficient procedure for negotiated settlement." (*Id.* at p. 6.) However, when he became aware at the initial case management conference that the United States intended to

defend the FTCA claim vigorously, he decided to re-assert the *Pike I* claims against the Deputized Officers.

In its Sur-Reply, the government contends, in relevant part, that *Milligan* is inapposite and that, unlike in *Milligan*, the discretionary function defense does not apply to the alleged facts and will not be asserted unless circumstances change.[9] The government also contends that Pike's stated reasons for re-asserting the *Pike I* claims are unconvincing.

## STANDARD OF REVIEW

In general, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2) (2011). However, "[a] motion for leave to amend may be denied for futility if the court concludes that the pleading as amended could not withstand a motion to dismiss." *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (internal quotation omitted); *see also Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). Thus, here, with respect to the issue of futility, the court must analyze the factual allegations under the motion to dismiss standard.

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain

---

[9]The government states that, "unless other facts are uncovered, a development that does not seem probable at this time – the discretionary function exception to the FTCA will not be asserted in this case. The defendant fully expects that the plaintiff's FTCA case will proceed to discovery, including depositions, and that it will ultimately be tried before this court." (Docket No. 19 at p. 5) (emphasis in original).

statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To establish the "facial plausibility" as required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

## ANALYSIS

### I.    Constitutional Claims

Title 42 U.S.C. § 1983 provides a cause of action for constitutional deprivations arising out of actions taken under color of state law – not federal law. *Askew v. Bloemker*, 548 F.2d 673, 676-77 (6th Cir. 1976). However, a plaintiff may maintain claims for constitutional deprivations arising out of actions taken under color of federal law pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). The decisional law for § 1983 claims and *Bivens* claims is essentially the same. *Butz v. Economou*, 438 U.S. 478, 498-504, 89 S. Ct. 2894, 57 L. Ed. 2d 895 (1978); *Hill v. Lappin*, 630

F.3d 468, 471 (6th Cir. 2010); *Ruff v. Runyon*, 258 F.3d 498, 502 (6th Cir. 2001); *McSurely v. Hutchison*, 823 F.2d 1002, 1005 (6th Cir. 1987); *Garavaglia v. Budde*, 43 F.3d 1472, 1994 WL 706769, at *1 n. 1 (6th Cir. Dec. 19, 1994) (table opinion).

Here, Pike's Proposed Amended Complaint alleges constitutional claims against the Deputized Officers under § 1983, even though the officers are alleged to have acted under color of federal law – *i.e.*, they are plainly *Bivens* claims, not § 1983 claims. *See Ellis v. Ficano*, 73 F.3d 361, 1995 WL 764127 (6th Cir. Dec. 27, 1995) (table opinion) (where Wayne County law enforcement officers were deputized as DEA Task Force agents, § 1983 did not apply, but "plaintiffs were left with an appropriate avenue of recovery against them under *Bivens*"); *Turk v. Comerford*, No. 09-cv-868, 2011 WL 127147, at *7 (N.D. Ohio Jan. 14, 2011) (holding that local law enforcement officers who were deputized as federal officers within an FBI-administered task force could be held liable under *Bivens*, but not § 1983), *reconsidered on other grounds*, 2011 WL 1899209 (N.D. Ohio May 19, 2011). In fact, Pike's counsel made the same oversight in the *Pike I* Complaint and *Pike I* Amended Complaint.

The government argues that the court should not exercise its discretion to construe either the *Pike I* claims or the *Pike II* proposed claims as *Bivens* claims, essentially because Pike is not proceeding *pro se* and because, even before filing *Pike I*, Pike was well aware that the Deputized Officers had acted under color of federal law. The government chiefly relies on *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003), in which the Sixth Circuit considered the preemptive effect of the plaintiff's *Mitchell I* lawsuit on a second action *(Mitchell II)* based on the same facts. In *Mitchell I*, the plaintiff, a United States Postal Service ("USPS") employee, asserted federal disability discrimination claims against the USPS and the Postmaster General,

but did not allege a constitutional claim.  *Id.* at 817.  The *Mitchell I* court granted summary judgment in favor of the defendants.  *Id.*  In *Mitchell II*, based on the same operative facts and well outside of the one-year statute of limitations period, the plaintiff sued the USPS and several new defendants, re-asserting the federal disability discrimination claims and purporting to assert new claims under Title VII, the FMLA, § 1983 (*i.e.*, a constitutional claim that should have been pleaded under *Bivens*), the Fourteenth Amendment, and the Kentucky Civil Rights Act.  *Id.* at 817-18.  On appeal, the Sixth Circuit held that, while the *Mitchell I* judgment precluded the claims against the USPS and the individual defendants in their official capacities, it did not bar the claims against the individual defendants in their personal capacities.  *Id.* at 824-25.

With respect to these individual capacity claims, the court then considered whether the they were pleaded adequately.  *Id.* at 825.  The court observed that the claims actually arose under *Bivens*, not under § 1983 as improperly alleged in the *Mitchell II* complaint.  *Id.*  Mitchell apparently argued that, under these circumstances, the district court was *required* to construe the constitutional claims as *Bivens* claims.  The Sixth Circuit disagreed, stating that "[t]here lacks any authority in support of [the plaintiff's] blanket proposition that a court *must* convert a Section 1983 claim asserted against federal officials to one asserting *Bivens* violations."  *Id.* (emphasis added).  However, the Sixth Circuit did not reach the question of whether the district court *could* have exercised its discretion to convert the plaintiff's claims under the circumstances, because those claims nevertheless failed on two independent grounds:

> Assuming *arguendo*, that this Court were to place such a requirement on the district courts [to convert *Bivens* claims], Mitchell's claim nevertheless fails. . . . [A]s the district court acknowledged, Mitchell filed his § 1983 claim (or the purported *Bivens* action) nearly three years past the limitations period.

> Furthermore, it is well settled that USPS employees may not allege *Bivens* claims

14

arising out of their employment relationship with the USPS. Consequently, Mitchell's purported *Bivens* claim fails as a matter of law.

*Id.* (internal citations omitted).

Accordingly, although *dicta* in *Mitchell* suggests that district courts are not *required* to convert *Bivens* claims, it plainly does not preclude a district court from exercising its discretion to do so. Indeed, courts within and outside of the Sixth Circuit have often exercised their discretion to construe § 1983 claims as *Bivens* claims (or vice-versa), even where the parties were represented and there was no apparent dispute that the defendants were acting under color of federal law or state law. *See, e.g., Ellis*, 1995 WL 764127, at *15-*16; *Hall v. United States*, 704 F.2d 246, 249 n.1 (6th Cir. 1983) (affirming dismissal of action, where district court had construed "§ 1983" constitutional claims against IRS Director by represented party as *Bivens* claims and noting that, "[a]lthough *Bivens* dealt with a Fourth Amendment violation, its logic appears equally applicable to the constitutional claims raised herein"); *Davis v. Clark Cnty. Bd. of Comm'rs*, No. C-3:08-cv-412, 2010 WL 333651 (construing "*Bivens*" claim as a § 1983 claim, where represented plaintiff had alleged that defendant County Detective was "acting under color of state law"); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *18 (E.D. Ky. June 9, 2006) (construing represented plaintiff's "§ 1983" claims relating to treatment at federal medical center as *Bivens* claims), *aff'd* at 257 Fed. App'x 897, 899 (6th Cir. 2007); *see also Denson v. United States*, 574 F.3d 1318, 1329-1330 (11th Cir. 2009); *Bell v. Laborde*, 204 Fed. App'x 344, 345 n.2 (5th Cir. 2006); *Witherspoon v. White*, 111 F.3d 399, 400 n.1 (5th Cir. 1997); *Roman v. Townsend*, 224 F.3d 24, 26 n.2 (1st Cir. 2000); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.")

Here, the government justifiably faults Pike's counsel for asserting that the constitutional

claims arise under § 1983 on multiple occasions, even though those claims are plainly not cognizable under § 1983 and should have been pleaded as *Bivens* claims. Nevertheless, until the government's Response was filed on February 23, 2012, it does not appear that any party in *Pike I* or in *Pike I* had alerted Pike or the court to this issue. Indeed, in the motions seeking dismissal/judgment in *Pike I*, none of the moving defendants contended that the *Pike I* Amended Complaint failed to state a cause of action on the grounds that the claims were not cognizable under § 1983. Presumably, had any of the Deputized Officers moved on these grounds in *Pike I*, Pike would have urged the court to construe the claims as arising under *Bivens* and/or sought leave to amend the *Pike I* causes of action accordingly.

Moreover, whatever the source of the cause of action, the *Pike I* Complaint, *Pike I* Amended Complaint, and the proposed *Pike II* Amended Complaint clearly articulate(d) constitutional claims against the Deputized Officers for Fourth Amendment violations.[10] Thus, regardless of the source of the cause of action, the Deputized Officers were on sufficient notice in *Pike I* and will be on sufficient notice again here of the claims against them, consistent with the notice pleading standard of Fed. R. Civ. P. 8. Moreover, the legal standards governing *Bivens* claims are essentially the same as those governing § 1983 claims. Thus, simply construing the constitutional claims as *Bivens* claims does not result in any apparent prejudice to the government or to the individual defendants.

_____

[10]The court is not hereby ruling on whether the constitutional claims meet the *Bivens* standard or whether they are subject to any viable defenses by the Deputized Officers, issues which have not been briefed. The court simply finds that, whatever the merits of the allegations, the Amended Complaint will place the Deputized Officers on sufficient notice of the allegations against them, whether the claims are construed as § 1983 claims or (appropriately) as *Bivens* claims.

For these reasons, the court will construe Pike as having asserted *Bivens* claims in *Pike I* and as seeking to re-assert those same *Bivens* claims now.

**II.      Timeliness of the Proposed Claims Against the Deputized Officers**

    **A.      Applicable Statute of Limitations**

Actions premised on federal constitutional claims, whether brought pursuant to § 1983 or *Bivens*, are governed by the statute of limitations of the forum state "if it is not inconsistent with federal law or policy to do so." *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (quoting *Wilson v. Garcia*, 471 U.S. 261, 266-67, 91 S. Ct. 1938, 85 L. Ed. 2d 254 (2005)). "Not only the length of the limitations period, but also 'closely related questions of tolling and application' thus are 'governed by state law.'" *Id.* (quoting *Garcia*, 471 U.S. at 269); *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 484-85, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980); *Higley v. Mich. Dep't of Corrections*, 835 F.2d 623, 624 (6th Cir. 1987). Here the parties agree that Pike's constitutional claims are governed by Tennessee's one-year statute of limitations. *See* Tenn. Code Ann. § 28-3-104(a)(3); *Merriweather v. City of Memphis*, 107 F.3d 396, 398, 398 n.1 (6th Cir. 1997) (applying Tennessee statute of limitations to constitutional claims arising out of conduct that occurred in Tennessee); *McSurely*, 823 F.2d at 1005 (applying Kentucky statute of limitations to constitutional claims arising out of alleged violations that occurred in Kentucky).

The parties disagree as to whether any of the proposed claims against the Deputized Officers are timely. As described in more detail below, the Tennessee Savings Statute, Tenn. Code Ann. § 28-1-105 (2000), permits a plaintiff to revive dismissed claims against a defendant, provided that the claims are re-asserted within one year of a non-merits dismissal. Here,

although not precisely articulated in his Response or Reply, Pike appears to rely on the following

logic to establish that the constitutional claims against the Deputized Officers are timely:

(1)    The claims in both *Pike I* and *Pike II* are properly construed as *Bivens* claims;

(2)    The claims asserted against the Deputized Officers in the *Pike I* Amended Complaint were timely when they were asserted and, therefore, were subject to being "saved" by the Tennessee Savings Statute after Pike voluntarily dismissed *Pike I* on February 24, 2011;

(3)    Pike sought leave to re-assert the claims against the Deputized Officers on February 20, 2012, less than one year from the date *Pike I* was dismissed, thereby satisfying the Savings Statute.

The court will analyze each of these steps in turn.

**B.    The nature of Pike's claims in *Pike I* and *Pike II***

As set forth in Analysis Section I above, the court has found that the claims in *Pike I*

(both in the original *Pike I* Complaint and the *Pike I* Amended Complaint) and the proposed

claims in *Pike II* are properly construed as *Bivens* claims.

**C.    Timeliness of the *Pike I* claims**

1.    <u>Claim Against Godby</u>

Only Deputized Officer Godby was named in the *Pike I* Complaint, which was filed

within one year of the June 22, 2009 incident. Thus, there can be no dispute that the

constitutional claim against Godby in *Pike I* was timely and, therefore, subject to the Savings

Statute.

2.    <u>Claims Against the Remaining Deputized Officers</u>

The remaining Deputized Officers were added to *Pike I* in the Amended Complaint. At

the time, several of these later-added Deputized Officers argued that the claims against them

were untimely because they did not relate back to the original Complaint.  However, because the court granted Pike's petition for voluntary dismissal in *Pike I* before ruling on the motions to dismiss and the motion for judgment on the pleadings, the court did not rule on the limitations issue.  Here, the claims against the Deputized Officers (other than Godby) are subject to the Savings Statute only if the *Pike I* Amended Complaint allegations were timely when they were asserted.  For that reason, the court will address the relation back issue now, even though the parties have not briefed the issue since *Pike I*.

(a)     Relation Back

The claims against the Deputized Officers (other than Godby) in *Pike I* were asserted on December 2, 2011, more than one year after the June 22, 2009 incident.  Under Fed. R. Civ. P. 15(c)(3), a claim may relate back to the date of the original complaint under the following conditions:

> [T]he amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied[11] and if, within the period provided by Rule 4(m) for serving the summons and complaint [*i.e.* 120 days], the party to be brought in by amendment:
>
>> (I)     received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Within the Sixth Circuit, "[s]ubstituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties."  *Cox v. Treadway*, 75 F.3d

---

[11]Rule 15(c)(1)(B) states that an amendment relates back if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."

230, 240 (6th Cir. 1996). "Therefore, the requirements of Rule 15(c) must be met in order for the amendment adding the named defendant to relate back to the filing of the original complaint." *Id.* (affirming dismissal of amended complaint, where plaintiff sought to identify "John Doe" police officers outside one-year statute of limitations).

Here, although the *Pike I* Amended Complaint allegations concerned the same transaction or occurrence as those asserted in the *Pike I* Complaint, they do not appear to have otherwise satisfied Rule 15(c), because there is no indication that the Deputized Officers were placed on notice of the action within 120 days from the date the *Pike I* Complaint was filed.[12] Thus, as the Deputized Officers had argued in *Pike I*, the *Pike I* Amended Complaint allegations did not relate back to the filing date of the *Pike I* Complaint under Rule 15.

(b)     Tolling of the Statute of Limitations

The fact that the *Pike I* amendments did not relate back to the date of the *Pike I* Complaint does not end the court's inquiry into the timeliness of those amendments, however. Even where a plaintiff's proposed amendment does not satisfy Rule 15, the court must look to state law to determine whether the statute of limitations should be tolled and must enforce that law unless it is "'inconsistent' with federal law. *Tomanio*, 446 U.S. at 483-84. Therefore, here, the court must look to Tennessee tolling law and, if necessary, determine whether application of that body of law would be inconsistent with federal law.

---

[12]Some of the materials suggest that certain local authorities who employed particular Deputized Officers may have been on notice of Pike's complaints about the incident as early as September 2009, but it is not clear whether that information was conveyed to the officers involved. (*See* Docket No. 10 at p. 17 (noting that Gallatin Police Department, which employed one Deputized Officer involved in the incident, had received a formal complaint from Pike on or before September 8, 2009).

Tennessee, unlike many other states and the federal courts, does not recognize the doctrine of equitable tolling in civil cases. *Redwing v. Catholic Bishop Diocese of Memphis*, - - S.W.3d - - , 2012 WL 604481, at *19 (Tenn. Feb. 27, 2012). However, in addition to certain statutory exceptions not applicable here, Tennessee recognizes two other tolling doctrines: equitable estoppel and fraudulent concealment. *Id.* at *19.

The doctrine of equitable estoppel tolls the running of the statute of limitations when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period, such as by making "specific promises, inducements, suggestions, representations, assurances, or other similar conduct . . . that the defendant knew, or reasonably should have known, would induce the plaintiff to delay filing suit." *Id.* Here, the equitable estoppel doctrine is inapplicable because Pike was not induced by the United States or the Deputized Officers into failing to file suit within the statute of limitations – in fact, Pike filed the *Pike I* lawsuit against Godby and the other Deputized Officers as "John Does" within the one-year statute of limitations.

As to fraudulent concealment, the issue presents a closer question. Prior to the Tennessee Supreme Court's recent decision in *Redwing*, it appeared that Tennessee only recognized fraudulent concealment where the defendant had concealed the existence of the plaintiff's *injury*. *Id.* at 21. However, *Redwing* extended the doctrine to certain "circumstances . . . in which the plaintiff is aware that he or she ha[s] been injured but does not know or have reason to know the identity of the person or persons who caused the injury." *Id.* Thus, as *Redwing* clarified, "the doctrine of fraudulent concealment applies . . . to circumstances in which the defendant engages in conduct intended to conceal the identity of the person or persons who caused the plaintiff's injury from the plaintiff." *Id.* (emphases added). Specifically, a claim of fraudulent

21

concealment to toll the running of the statute of limitations contains four elements:

> (1)     The defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so;

> (2)     The plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence;

> (3)     The defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and

> (4)     The defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.

A plaintiff asserting the doctrine of fraudulent concealment to toll the running of a statute of limitations must demonstrate that he exercised reasonable care and diligence in pursuing his claim. *Id.* The statute of limitations is tolled until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim.

Here, Pike appears to have met at least some of the elements of a fraudulent concealment claim. As an initial matter, it is beyond dispute that Pike exercised "reasonable care and diligence" in pursuing his claims against the Deputized Officers: at least as of September 2009 (just three months after the incident), Pike and his counsel initiated a concerted effort to ascertain the identities of the Deputized Officers from local, state, and federal authorities. Pike made these entities aware that he had been injured in the June 22, 2009 incident and that he needed to identify the perpetrators of that incident, information that was within these entities' collective knowledge. Nevertheless, largely through a series of delaying tactics (*e.g.*, not responding in a timely fashion; asserting bureaucratic/technical objections that were later

dropped), misrepresentations (*e.g.*, the Metro Nashville Police Department erroneously stating that none of its officers had participated in the raid), and/or strategic omissions (*e.g.*, redacting the officers' names from documents produced), these entities prevented Pike from discovering the names.  In particular, it appears that the federal government strung Pike along for over a year, despite repeated requests for basic identifying information in letter correspondence, multiple FOIA requests, and multiple subpoenas.  Indeed, had the federal government produced the names before October 1, 2011, rather than on October 28, 2011, Pike could have sought leave to amend his Complaint within the 120-day window allowed by Rule 15(c) for relation back, in which case the timeliness issue would have been obviated.  Moreover, to the extent that Pike requested this information in public records requests and/or validly issued subpoenas, the local, state, and federal entities were under an obligation to provide that information to Pike, but refused to do so.  Thus, through no fault of his own, Pike was unable to file an otherwise timely claim against the remaining Deputized Officers because of the defendants' failure to disclose that information upon request.

The only remaining question is whether the elements articulated in *Redwing*, which relate to concealment by "the defendant," extend to the circumstances presented in this case.  Here, the Deputized Officers' *employers* (local and state authorities) and the public authority that *deputized* them (the federal government) – not the Deputized Officers themselves – concealed the identifying information from Pike.  Although *Redwing* does not address this precise issue, it appears to be a logical extension of *Redwing* to find that fraudulent concealment is applicable here.  Because Pike had no way of knowing the Deputized Officers' identities, he sought the information from the public authorities that deputized and/or employed them, which constituted

the only practical means of gaining that necessary information.  It would be nonsensical and patently unjust to find that claims against the Deputized Officers (other than Godby) were not tolled, simply because it was their employer/deputizing authority that engaged in concealment.

Thus, the court finds that the statute of limitations period relative to the Deputized Officers was tolled under Tennessee law and that, therefore, the *Pike I* Amended Complaint allegations were timely.

### (c)      Federal Equitable Tolling

Finally, even if Tennessee law did not permit tolling of the statute of limitations here, the court would find that Tennessee law conflicts with federal law concerning constitutional claims asserted under *Bivens*.  To the extent state tolling law is inconsistent with federal law or policy, the court may impose the federal version of equitable tolling.  *See Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (citing *Wilson v. Garcia*, 471 U.S. 261, 266-67, 91 S. Ct. 1999 (2005)); *Heck v. Humphrey*, 997 F.2d 355, *aff'd* at 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 69 (1994); *see also Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000) (collecting cases and stating that, "[w]hen the state tolling rules contradict federal law or policy, in certain limited circumstances we can turn to federal tolling doctrine").  Indeed, in *Heck v. Humphrey*, which was affirmed by the Supreme Court, the Seventh Circuit found that, with respect to § 1983 claims, "*a body of state tolling law that lacks a provision for equitable tolling is inconsistent with the provision of a complete federal remedy . . .  and therefore is overridden by the federal doctrine.*" 997 F.2d at 358 (emphasis added); *see also Friedmann v. Campbell*, 202 F.3d 268, 1999 WL 1045281, at *2 (6th Cir. Nov. 8, 1999) (table opinion) (where plaintiff sued Tennessee official and other "John Doe" defendants for constitutional violations, district court should

consider on remand whether equitable tolling applies, if, " through no fault or lack of diligence on his part, [the plaintiff] was unable to sue before, even though the defendant took no active steps to prevent him from suing."); *Green v. Doe*, 260 Fed. App'x 717, 719 (5th Cir. 2007)[13]; *Giles v. Newman*, No. 11 C 2628, 2012 WL 366957, at *2-*3 (N.D. Ill. Feb. 2, 2012) (equitable tolling appropriate, where plaintiff allegedly made eight attempts to Chicago Police Department and Cook County Clerk to ascertain identity of police officer assailants).

*Bivens* is supposed to afford aggrieved Tennessee residents (among others) a cause of action for constitutional violations committed under color of federal law. However, if public authorities or officials could simply "run out the clock" on potential Tennessee litigants through bureaucratic evasion – which could be difficult to prove – *Bivens* would be rendered a nullity. Indeed, to find otherwise here would be patently unjust.

Thus, if Tennessee law did not otherwise toll the statute of limitations with respect to the *Pike I* amendments under the circumstances presented here, the result would be inconsistent with federal law and imposing federal equitable tolling would be appropriate.

### D.    Tennessee Savings Statute

---

[13]As explained by the Fifth Circuit in *Green*:

> To deny [the plaintiff] the opportunity to amend his complaint where he has diligently sought to discover the identity of a 'John Doe' would be tantamount to eliminating the use of a 'John Doe' in bringing any suit. The only reason to sue a 'John Doe' is to conduct discovery backed by the authority of the court, but where the amendment cannot relate back and the court incorrectly denies discovery, the 'John Doe' becomes a nullity. Although the use of a 'John Doe' is disfavored, it serves the legitimate function of giving a plaintiff the opportunity to identify, through discovery, unknown defendants.

260 Fed. App'x at 719.

Having determined that the constitutional claims in both *Pike I* and *Pike II* are properly construed as *Bivens* claims and that the claims against all of the Deputized Officers named in *Pike I* were timely, the court must determine whether the Tennessee Savings Statute "saved" the *Bivens* claims.

The Savings Statute provides as follows:

> (a)     If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action . . . the plaintiff     . . . may commence a new action within one (1) year . . . ."

Tenn. Code Ann. 28-1-105(a). The Savings Statute expands the time a plaintiff has to refile a claim, when the original complaint and the new complaint allege substantially the same cause of action, which includes identity of the parties. *Foster v. St. Joseph Hosp.*, 158 S.W.3d 418, 422 (Tenn. Ct. App. 2004). The purpose of the statute is to provide a diligent plaintiff a chance to renew a suit if it is dismissed other than by a judgment on the merits. *Freeman v. CSX Transp., Inc.*, No. M2010-01833-COA-R9-CV, 2011 WL 1344727, at *4 (Tenn. Ct. App. 2011) (citing *Turner v. Aldor Co. of Nashville, Inc.*, 827 S.W.2d 318, 321 (Tenn. Ct. App. 1991)). Thus, it is intended "to aid the courts in administering fairly between litigants without binding them to minor and technical mistakes made by their counsel in interpreting the complexities of the laws of procedure." *Foster*, 158 S.W.3d at 422 (quoting *Henley v. Cobb*, 916 S.W.2d 915, 917 (Tenn. 1996)).

Upon re-instituting an action, the plaintiff may exercise all of "the same procedural and substantive benefits which were available at the time of the first action," including the relation back of amendments to the original complaint. *See Energy Sav. Prods. v. Carney*, 737 S.W.2d 783, 785 (Tenn. Ct. App. 1987).

Because Tennessee law favors the resolution of disputes on their merits, the Savings Statute is remedial and should be liberally construed in furtherance of its purpose. *Freeman*, 2011 WL 1344727, at *4 (citing *Balsinger v. Gass*, 379 S.W.2d 800 (Tenn. 1964)); *Energy Sav. Prods.*, 737 S.W.2d at 785; *Foster*, 158 S.W.3d at 422; *Henley*, 916 S.W.2d at 916; *Laney Brentwood Homes, LLC v. Town of Collierville*, 144 Fed. App'x 506, 510 (6th Cir. 2005).

Here, Pike's voluntary dismissal of the *Pike I* action was without prejudice and, therefore, the constitutional claims against the Deputized Officers were preserved for one year. Pike initially filed this action against the United States, then filed the Motion for Leave to Amend on February 20, 2012, within one year of the *Pike I* dismissal. Thus, this case presents a peculiar circumstance: had Pike simply filed this action as to both the United States and the Deputized Officers on February 20, 2012, the Tennessee Savings Statute would plainly apply, because that action was "commenced" within one year of the *Pike I* dismissal as to the Deputized Officers. However, here Pike filed this action in October 2011 and now seeks to *add* the Deputized Officers, within one year of his dismissal of *Pike I*. The Savings Statute applies where a plaintiff "commences a new action" within one year of dismissal of the prior action. Tenn Code Ann. § 28-1-105(a). The question for the court is whether filing the Amended Complaint constitutes "commenc[ing] a new action" for purposes of the Tennessee Savings Statute.

The parties have not identified any case addressing this precise question. However, courts applying the Tennessee Savings Statute generally appear to interpret it expansively in somewhat similar contexts. *See, e.g.*, *Energy Sav. Prods.*, 737 S.W.2d at 785. Here, interpreting the Savings Statute liberally, as it must, the court finds that the proposed Amended Complaint

asserts timely claims. Pike met the essential requirements of the Tennessee Savings Statute, which requires him to re-assert the dismissed claims within one year. The court interprets the term "commence a new action" to include re-asserting the cause of action, whether through an independent lawsuit or, as here, through re-asserting the claims in the context of an existing action premised on the same underlying facts. To hold otherwise would frustrate the purposes of the Savings Statute, which encourages the resolution of claims on the merits.[14]

Thus, in furtherance of the broad remedial purposes of the Savings Statute, the court finds that the proposed claims against the Deputized Officers are "saved" by the Tennessee Savings Statute and, therefore, are not barred by the statute of limitations.

## III.   Other Considerations

The government argues that Pike's representations in the *Pike I* voluntary dismissal notice acted as his election of remedies and that his asserted reasons for naming the officers now are unconvincing.

### A.   Election of Remedies

Under 28 U.S.C. § 2676 of the FTCA, a judgment on a claim under the FTCA constitutes "a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." Thus, where a judgment is rendered for or against the United States with respect to a plaintiff's FTCA claim,

---

[14]Moreover, to hold otherwise would unnecessarily elevate form over function. Had Pike brought this lawsuit on February 20, 2012 against both the United States and the Deputized Officers, the claims would plainly have been subject to the Saving Statute. Also, even after Pike initiated this action against the United States, he could have skirted the "commencement" issue simply by filing a separate lawsuit against the Deputized Officers on February 20, 2012, which could have been consolidated into this action.

the plaintiff's claims against individual officers arising out of the same subject matter are barred. *See Serra v. Pichardo*, 786 F.2d 237, 239-42 (6th Cir. 1986); *Harris*, 422 F.2d at 333-34 ("Courts, including the Sixth Circuit, have consistently read § 2676 to bar a *Bivens* claim against a government employee 'arising out of the same actions, transactions, or occurrences' as an FTCA claim.") Nevertheless, a plaintiff may try both FTCA claims and *Bivens* claims in the same lawsuit, but may not ultimately recover under both. *See Serra*, 786 F.2d at 241; *Harris*, 422 F.3d at 334 ("The [FTCA bar] applies even when the claims were tried together in the same suit and the judgments were entered simultaneously.") (internal quotation marks omitted). By the same token, a judgment in favor of the government bars the further litigation of a *Bivens* claim premised on the same allegations. *See Harris,* 422 F.3d at 334-35.

Here, Pike argues that he did not elect his remedies and that the individual claims are important because (1) the government may assert a discretionary function exception to the FTCA claim; and (2) the *Bivens* claim affords additional remedies and a jury trial right that are not available under the FTCA. Pike acknowledges that, by pursuing the FTCA and *Bivens* claims simultaneously, he assumes the risk that a judgment on the FTCA claims will bar the *Bivens* claims.

In response, the government represents that, based on the facts as alleged, it does not intend to assert a discretionary function defense,[15] perhaps alleviating at least one of Pike's

---

[15]In *Milligan*, the Sixth Circuit considered FTCA claims by a plaintiff against the United States for conduct by deputized Operation FALCON members, who had inappropriately served a warrant on the plaintiff based on mistaken identity. Because the underlying mistake was essentially a clerical one, the Sixth Circuit affirmed this court's holding that the United States was entitled to summary judgment on the basis of the discretionary function exemption, 28 U.S.C. § 2680(a), which divests courts of subject matter jurisdiction when the federal actor exercises a "discretionary function" or duty. Here, the court agrees with the government that,

stated concerns. However, there is no binding stipulation to that effect, and the government does not dispute Pike's contention that the *Bivens* claims may be "stronger" than the FTCA claim in certain important respects. Indeed, the Supreme Court has acknowledged that "the *Bivens* remedy is more effective than the FTCA remedy," because, *inter alia*, it has a deterrent effect because it applies to individual officers, provides for punitive damages, and affords a jury trial right. *See Carlson v. Green*, 446 U.S. 14, 20-23, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980).[16]

The parties have not identified any legal authority concerning the effect of Pike's representations in the *Pike I* Rule 41 dismissal motion. The court will treat these statements as an expression of counsel's belief, at the time, that asserting claims against the United States under the FTCA was an appropriate means of litigating Pike's claims. However, the court does not regard that representation as having precluded Pike from re-asserting the dismissed claims,[17] particularly where *Bivens* claims afford remedies that are otherwise unavailable to Pike under the FTCA, and where federal law does not preclude Pike from litigating both sets of claims in this lawsuit.

## B. Basis for Re-Asserting Claims Against the Deputized Officers

Pike states that he has elected to re-assert claims against the Deputized Officers because, at the initial case management conference, it became clear that the government intended to

---

based on the alleged facts, the discretionary function exemption as to Operation FALCON members recognized in *Milligan* is inapplicable to this case.

[16]The FTCA expressly prohibits the assessment of punitive damages against the United States. *See* 28 U.S.C. § 2674. Also, subject to a narrow exception that is not applicable here, FTCA claims must be tried to the court. *Id.* § 2402.

[17]Many of these issues may have been avoided if Pike had, after exhausting his administrative remedies, simply added the United States as a defendant to *Pike I*, rather than dismissing the action and bringing a new lawsuit.

vigorously defend the FTCA claim. The court agrees with the government that this reason is not compelling – it is hardly surprising that the government is choosing to defend this action. Nevertheless, because the claims against the Deputized Officers are timely, Pike is entitled to re-assert these otherwise viable claims, and the court will not question his rationale for doing so any further.

**C.      Amendments to the Complaint**

Pike will be granted leave to amend his Complaint. However, although facially sufficient for the reasons set forth in the Memorandum, the Proposed Amended Complaint at Docket No. 11 requires several modifications and/or clarifications.

First, as discussed herein, Pike should plead his causes of action against the Deputized Officers as *Bivens* claims, not § 1983 claims. Second, the proposed Amended Complaint removes the "Negligence" section regarding the FTCA claim against the United States (Compl. ¶ 4) and substitutes it with a "Constitutional Violation" paragraph that appears to relate only to the constitutional claims against the Deputized Officers (Proposed Am. Compl. ¶ 4). Presumably, Pike meant to include both the Negligence paragraph and the Constitutional Violation paragraph in his allegations and should correct this apparent oversight. Third, Pike must clarify the relief he seeks. He will be entitled to a jury trial on the *Bivens* claims but not the FTCA claim. Also, it is now unclear whether he demands (or could be entitled to) prejudgment interest and/or attorney's fees.[18] Pike should also clarify whether he seeks compensatory damages in a sum certain (as stated in the Complaint) or in an amount to be determined (as stated in the Proposed

---

[18]In any case, he is plainly not entitled to any recovery of attorney's fees under 42 U.S.C. § 1988, because § 1983 is inapplicable.

Amended Complaint).

The Amended Complaint shall be filed no later than April 25, 2012. For statute of limitations purposes, this Amended Complaint shall be regarded as having been filed on February 20, 2012, the date on which Pike filed the Motion for Leave to Amend and the associated Proposed Amended Complaint.[19]

### D.     Qualified Immunity

In competing footnotes, the parties dispute whether the alleged facts implicate a qualified immunity defense. The United States notes that, if the court were to convert the constitutional claims into *Bivens* claims – which it has – the United States would "immediately file a Motion to Dismiss based on qualified immunity," because "the search of the plaintiff's home was exceedingly constitutional." (Docket No. 19 at p. 5-6, n.3.) The court will not address the merits of this argument at this time. Of course, once Pike files his Amended Complaint in compliance with this order, the government and the Deputized Officers will have the opportunity to respond to the amended allegations in accordance with applicable rules.

### CONCLUSION

Pike's Motion for Leave to Amend will be granted. Pike will be permitted to amend his Complaint by April 25, 2012, in a manner consistent with this Memorandum.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[19]The court expects the Amended Complaint to be carefully drafted. Pike will be "cut no further slack" in this regard.